IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KIM BUEHLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-1241-JTM-GEB |
| ) | |
| FAMILY DOLLAR, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Compel Defendant to produce video surveillance footage (**ECF No. 12**). On December 19, 2017, the Court convened an in-person hearing to address the pending motion. Plaintiff Kim Buehler appeared through counsel, Kathryn Wright. Defendant Family Dollar, Inc. appeared through counsel, Christopher Wnuk. After consideration of both the arguments of counsel and the parties' briefing, the Court **GRANTED** Plaintiff's Motion (ECF No. 12) at hearing. The previously-announced ruling of the Court is now memorialized below.

### I.    Background[1]

This is a slip-and-fall case, arising from an accident on May 14, 2016 at a Family Dollar store in Wichita, Kansas.  Plaintiff Kim Buehler was a customer in the store when

---

[1] The information recited in this section is taken from the pleadings (*see* Petition, attached to Notice of Removal, ECF No. 1-1) and from the briefs regarding the Motion to Compel (ECF Nos. 12, 15, 17).  This background information should not be construed as judicial findings or factual determinations unless specifically stated.

she claims she slipped on an unmarked wet spot, causing her to fall and sustain injuries. She claims her damages resulted from Defendants' negligence, and seeks reimbursement for her medical expenses, lost wages, pain and suffering and emotional distress. Defendant denies both liability, and the nature and extent of Plaintiff's injuries.

Plaintiff initially filed her case in the Sedgwick County District Court.[2] After she served discovery responses making it clear she seeks damages in excess of $75,000, Defendant removed the case to this Court on September 25, 2017 (ECF No. 1) on the basis of diversity jurisdiction under 28 U.S.C. § 1332.[3]

Prior to removal, the parties engaged in written discovery. Plaintiff filed a motion to compel before the Sedgwick County District Court (State Court Records, ECF No. 10, at 22; Motion, ECF No. 12). Before the State Court had the opportunity to review the motion, Defendant removed the action, placing the issue before this Court.

## II.   Plaintiff's Motion to Compel (ECF No. 12)

The dispute between the parties is confined to a discovery request contained in Plaintiff's First Request for Production of Documents served on Defendant on July 24, 2017 (ECF No. 12, at 13). That request asks Defendant to produce "copies of all video footage related to the slip and fall accident which occurred on May 14, 2016 at Store #6951 located at 2301 S. Seneca St. in Wichita, Kansas, including footage one hour prior to the incident

---

[2] *Buehler v. Family Dollar, Inc.,* Case No. 2017-LM-007625-LU (Sedgwick Co. Dist. Ct. filed May 26, 2017).

[3] *See* Def.'s Notice of Removal, ECF No. 1, at ¶ 5 (citing 28 U.S.C. § 1446(b)(3) as support for removal).

and one hour after the incident." (*Id.*)  Defendant objected, contending the "Request seeks materials protected from disclosure by the work product doctrine." (*Id*. at 14.)

### A. Compliance with D. Kan. Rule 37.2

Throughout the briefing, and during the in-person hearing, the parties demonstrated their attempts to resolve their differences.  Therefore, the Court is satisfied they have sufficiently conferred as required by D. Kan. Rule 37.2 and Fed. R. Civ. P. 37(a)(1).  However, despite their attempts, the parties could not agree regarding production of the videos, leading to Plaintiff's motion.

### B. Discussion

The parties do not disagree regarding the relevance of the video footage, but rather, whether the videos are protected from disclosure.  Defendant argues the videos are shielded by the work product doctrine, and if the videos must be produced, Defendant asks that they be produced after Defendant has the opportunity to conduct written discovery and Plaintiff's deposition.  Plaintiff contends any videos were prepared in the course of Defendant's business—not in anticipation of litigation—and therefore the work product doctrine does not protect them.  The parties' arguments regarding the work product protection and timing of production are addressed in turn.

1.     **Work Product**

The analysis of the work product doctrine is governed by the federal standard outlined in Fed. R. Civ. P. 26(b)(3).[4]  For Defendant to establish protection under the work product doctrine, it bears the burden to demonstrate "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[5]  For work product protection to apply, "there must be a real and substantial probability that litigation will occur at the time the documents were created."[6]

The parties do not dispute that the videos are tangible things, nor that they were prepared by Defendant.  The crux of the parties' dispute is whether Defendant prepared the surveillance videos in anticipation of litigation.  To make this determination, two elements are examined.  First, the Court looks at the issue of causation—whether the videos were created "*because of* the anticipation of litigation (i.e. to prepare for litigation or for trial)."[7]  Next, the Court examines the reasonableness of Defendant's anticipation of litigation—"the threat of limitation must be 'real' and 'imminent.'"[8]  "Because litigation can, in a sense, be foreseen from the time of occurrence of almost any incident, courts have interpreted the

---

[4] *Kannaday v. Ball*, 292 F.R.D. 640, 648 (D. Kan. 2013) (citing *Frontier Refining, Inc. v. Gorman–Rupp Co.,* 136 F.3d 695, 702 n. 10 (10th Cir. 1998) (stating that "the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)") (internal citation omitted)); *see also Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2012 WL 1207232, at *8 (D. Kan. Apr. 11, 2012) ("federal law governs work-product issues").

[5] *Kannaday*, 292 F.R.D. at 648 (citing *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000) (other internal citations omitted)).

[6] *Id.*, and *Sperber v. Mercy Reg'l Health Ctr.*, No. 14-1331-EFM-GEB, 2016 WL 742883, at *2 (D. Kan. Feb. 24, 2016) (both citing *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 657 (D. Kan. 2007)).

[7] *Id.* (citing *Marten v. Yellow Freight Sys., Inc.,* No. 96–2013–GTV, 1998 WL 13244, at *10 (D. Kan. Jan. 6, 1998)) (emphasis added).

[8] *Id.* at 649.

4

[work product doctrine] to require a higher level of anticipation in order to give a reasonable scope to the immunity."[9]

Defendant argues it created the videos pursuant to company policy for the primary purpose of use by their insurer and defense counsel in likely litigation arising out of the incident. It supports its argument with a sworn statement from its store manager, noting he followed company policy by reporting the incident and sending the surveillance videos to its insurer to assist in its investigation and to obtain legal advice in anticipation of a *likely* claim or litigation. (Def.'s Response, ECF No. 15, at 7, emphasis added.)

The Court focuses on the store policy and the likeliness of a claim in making its determination. Simply because the store's policy is to send its surveillance videos to its insurer, or even to its counsel, this does not make every video automatically subject to work product protection. In fact, defense counsel acknowledged that the surveillance equipment is constantly recording. The constant running of the camera, and the store's general policy itself, give the impression that the creation of the video was an ordinary business practice—albeit a kind of "our ordinary practice is to expect litigation" argument. But even if the Court takes the leap to considering every video created by Defendant to be "because of" litigation (which the Court declines to do)—Defendant must still demonstrate the reasonableness of its anticipation of litigation. It is this second prong the Court finds lacking.

Here, litigation was neither real nor imminent when the video was created. The standard of reasonableness is not so low as to simply require a claim to be possible or

---

[9] *U.S. Fire Ins.*, 247 F.R.D. at 658 (D. Kan. 2007) (citing *Marten*, 1998 WL 13244, at *10).

"likely," as argued by Defendant. Rather, courts require a higher standard of anticipation, such as whether the video was created for specific litigation.[10] "The inchoate possibility, or even the likely chance of litigation, does not give rise to the privilege."[11]

Therefore, because the threat of litigation was not imminent when the surveillance videos were created, the Court finds the videos are not protected by the work product doctrine. Plaintiff's motion is **GRANTED**, and Defendant is ordered to produce the videos.

### 2. Timing of Production

In the event the videos were deemed discoverable, Defendant asks the Court to postpone production of the surveillance videos until after it has the opportunity to both depose Plaintiff and issue written discovery. Defendant seeks to "lock down" her testimony before permitting her to view video, which might provide her the chance to tailor her testimony. Defendant contends permitting it to wait to produce the videos would preserve the videos' potential impeachment value.

Although Plaintiff did not address the timing issue in her briefing, her counsel responded during the hearing. She contends she needs the video to ascertain exactly what happened on the day in question, particularly because Plaintiff's memory is questionable. Counsel argued Plaintiff was traumatized due to her physical injuries, and cannot specifically recall the details of the incident. She claims she is not seeking the video for any

---

[10] *See Kannaday*, 292 F.R.D. at 649 (finding even if a document was generated by or for its attorney, the party claiming work-product protection must still "establish the underlying nexus between the preparation of the document and the *specific* litigation") (emphasis added).
[11] *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 683 (D. Kan. 2000).

improper purpose; rather, the video is basic to Plaintiff's claim, and to deny her access would be unfairly prejudicial.

Two District of Kansas cases have addressed similar requests to postpone production. First, in the 2000 case of *Walls v. Int'l Paper Co.*,[12] the Court examined the production of surreptitiously-recorded conversations involving the plaintiff. The Court found the recordings discoverable, but found "postponing production of the prior statements until after the party making the statements had been deposed would protect both interests"—that is, "protect the legitimate interests of both parties—defendant's interest in determining the extent of plaintiff's present unrefreshed recollection, and plaintiff's interest in examining [earlier recorded statements] prior to trial so that he may honestly explain any inaccuracies or errors in his present or past account."[13]

Later, however, in a 2005 case, another District of Kansas opinion expanded on this holding. In *Stoldt v. Centurion Indus., Inc.*,[14] the court emphasized that the desire to preserve the impeachment value of evidence must be weighed against the need to discover substantive evidence. The court reasoned:

> Plaintiffs rely on *Walls v. Int'l Paper Co.* among other cases, for the proposition that a plaintiff may withhold recorded tapes until after the deposition of a Defendant's witness and/or Fed.R.Civ.P. 30(b)(6) representative. The primary rationale of *Walls,* as well as the other cases relied upon by Plaintiffs, is that delaying the production of tape recordings until after the deposition of a witness will preserve the impeachment value of the evidence.

---

[12] *Walls v. Int'l Paper Co.*, 192 F.R.D. 294 (D. Kan. 2000).
[13] *Wall*, 192 F.R.D. at 298 (quoting *McCoy v. General Motors Corp.,* 33 F.R.D. 354 (W.D. Pa. 1963) (other internal citations omitted).
[14] *Stoldt v. Centurion Indus., Inc.*, No. 03-2634-CM-DJW, 2005 WL 375667, at *1 (D. Kan. Feb. 3, 2005).

> The interest in preserving impeachment evidence, however, must be weighed against competing interests.  Here, *the interest in preserving impeachment evidence must be balanced against the competing interest in discovering substantive evidence;* in other words, discovering factual information within the tape recordings that is central to the case.[15]
>
> "In the instance of a recording of fact events, surreptitious or not, the real value of the recording is not in impeaching a witness, but in the facts and issues determined by the recording." "[C]lassifying evidence as to its relative importance as either impeachment or substantive evidence provides the best criteria for determining whether to delay production of evidence until after a party has been deposed.  To the extent the substantive value of the evidence outweighs its impeachment value, the court will not delay production pending the taking of a deposition."[16]

After consideration of *Stoldt* and counsel's arguments, the Court finds the surveillance videos contain facts central to this litigation.  The videos encompass recordings of the very events that form the basis of Plaintiff's claims.  Because the predominant value of the videos is substantive, rather than for purposes of impeachment, the Court denies Defendant's request to delay the videos' production.

## C.     Conclusion

In light of the above discussion, **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (**ECF No. 12**) is **GRANTED**, and Defendant's request to delay production of the videos is **DENIED**.  Defendant must produce the surveillance videos to Plaintiff within 14 days of the filing of this order.

---

[15] *Stoldt*, 2005 WL 375667, at *1 (emphasis added).
[16] *Id*. (citing *Pro Billiards Tour Ass'n., Inc. v. R.J. Reynolds Tobacco Co.,* 187 F.R.D. 229, 230 (M.D.N.C.1999) (other internal citations omitted).

8

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 4th day of January, 2018.

                                                              s/ Gwynne E. Birzer
                                                              GWYNNE E. BIRZER
                                                              United States Magistrate Judge